# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**DONALD E. TANNEY, SR,**

        **Plaintiff,**

**-vs-**                                                        **Case No.  5:10-cv-311-Oc-18-TBM**

**MICHAEL J. ASTRUE, Commissioner of
Social Security,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income ("SSI") payments.[1]  Because the decision of the Commissioner of the United States Social Security Administration is supported by substantial evidence and is in accordance with the correct legal standards, it is respectfully recommended that it be affirmed.

### A.

Plaintiff was forty-seven years old at the time of his administrative hearing on January 23, 2008.  (R. 32-33).  He stands five feet, two inches tall and weighed 165 pounds at the hearing.  (R. 49). Plaintiff has a ninth-grade education and past relevant work as a mechanic.  (R. 33, 34, 126-27, 130). Plaintiff applied for disability benefits and SSI payments in December 2005, alleging disability as of

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987.  *See also* M.D. Fla. R. 6.01(c)(21).

May 1, 2003, due to pain resulting from arthritis in his arms, shoulders, and neck. (R. 105-09, 110-14, 126). Plaintiff's claims were denied initially and upon reconsideration. (R. 71-73, 74-76, 78-79, 80-82). The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ") (R. 24-57). The Plaintiff was represented at the hearing by an attorney and testified on his own behalf.

According to Plaintiff, after back surgery in 2000, his arthritis worsened and he has had constant pain in his neck, shoulders, arms, elbows, and hands ever since. (R. 35, 36-39). Plaintiff was able to continue working on a part-time basis as a mechanic, three days a week, until October 2005, at which point he could no longer work due to the pain. (R. 21, 35, 248, 249). By his account, he only can sit for thirty minutes; stand in one place for ten to fifteen minutes; lift up to eight pounds; and he has trouble reaching over his head and squatting or stooping. (R. 39-43). In January 2006, Plaintiff reported that on a scale of one to ten, with ten being the worst possible pain, his left shoulder pain was ten and his elbow pain was nine. (R. 140). Plaintiff also reported having anxiety and panic attacks. (R. 44-46). He gets some relief from Lexapro, which was prescribed by Dr. Brent Leytem. (R. 44-45).

Plaintiff lives with his girlfriend and eight-year old daughter. He tries to keep up with the laundry and the dishes because his girlfriend works. (R. 43). He is able to go to the grocery store but does not like to be around that many people. (R. 46). He does not mind going to the convenience store. (R. 46). Plaintiff reported that he shoots pool at his pool table and "hang[s] out" with his friends at home. (R. 258)

Also before the ALJ were medical records outlining Plaintiff's medical history.  These matters are well set out by the parties' memoranda and are discussed herein as necessary.  Plaintiff last met the insured status requirements on December 31, 2009.

By his decision of April 30, 2008 (R. 12-23), the ALJ determined that while Plaintiff has the severe impairments of cervical muscle strain, trapezius muscle strain, and osteoarthritis with degenerative joint disease of the shoulders, he nonetheless had the residual functional capacity to:

> lift and carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with no pushing and pulling using his lower extremities and no frequent overhead reaching.  The claimant should avoid frequently ascending and descending stairs and he cannot climb ladders, ropes or scaffolds but he can occasionally balance, stoop, kneel, crouch and crawl.  He is able to perform pushing and pulling motions up to 20 pounds using his upper extremities and can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching.  But due to pain and the side effects of his medication he must avoid exposure to heights and hazardous machinery and he is limited to routine work with one, two or three step instructions.

(R. 19).  The ALJ then found that Plaintiff was not disabled because he could perform other jobs that exist in significant numbers in the national economy . (R. 22-23).  The Appeals Council denied Plaintiff's request for review.  (R. 1-4).

B.

Consideration of the Plaintiff's claims is governed by certain principles.  In order to be entitled to Social Security disability benefits and Supplement Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . ."  42 U.S.C. §423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or

-3-

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id* at §423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at §405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

-4-

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. §405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ failed to articulate good cause for discrediting the opinions of Plaintiff's treating physician, Dr. Brent Leytem. Second, Plaintiff contends that if the ALJ had properly credited the opinions of Dr. Leytem, Plaintiff would be disabled based on the testimony of the VE.

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, I find that the ALJ properly considered the opinion of Dr. Leytem as a treating physician and articulated good cause for discounting his opinions regarding Plaintiff's functional limitations.

When considering a treating physician's opinion, the ALJ must ordinarily give substantial or considerable weight to such evidence unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was

-5-

conclusory or inconsistent with his or her own medical record.  *Phillips*, 357 F.3d at 1240-41

(citing *Lewis*, 125 F.3d at 1440).

        Here, the decision reflects that after fair review of the medical evidence, the ALJ accorded

"little weight" to the Physical Capacity Evaluation ("PCE") completed by Dr. Leytem on January

31, 2007.  (R. 308).  In the one-page PCE, Dr. Leytem opined that Plaintiff could lift and carry a

maximum of five pounds occasionally and one pound frequently, sit for six hours in an eight-hour

workday, and stand/walk for three hours in an eight-hour workday.  Dr. Leytem further opined that

Plaintiff could never work with or around hazardous machinery and only rarely push/pull, climb,

and reach; and that Plaintiff would likely be absent from work more than four days per month due

to his impairments or treatment.  Finally, Dr. Leytem noted that these restrictions applied since

January 1, 2005, and that the restrictions were supported by diagnosis of osteoarthritis and

"possibly other diagnoses but unable to do lab [and] radiology eval due to cost restrictions."

        In discounting Dr. Leytem's opinions, the ALJ noted that beyond the checkmarks Dr.

Leytem placed on the PCE form devised by Plaintiff's representative, the opinion was unsupported

by "any adequate explanations and/or any objective clinical signs, diagnostic studies or laboratory

findings." (R. 20).  The ALJ further explained that there was absolutely no evidence to suggest a

five pound lifting restriction, there were not even complaints of musculoskeletal pain in January

2005, nor was there any range of motion testing or radiological evidence.  *Id*.  In addition, the ALJ

noted that Dr. Leytem's opinion was inconsistent with his statement in January 2006 reporting

only occasional cervical spasm with slightly reduced range of motion, normal gait, normal fine

dexterity and 5/5 muscle strength.  *Id*.

-6-

By my consideration of the medical record from Dr. Leytem, the ALJ fairly concluded that his treatment notes did not support his opinion that Plaintiff was essentially unable to perform any work. As noted, Dr. Leytem saw Plaintiff on about seven occasions from July 2002 through January 2007. (R. 247-56, 308-15). In July 2002, Plaintiff reported right arm pain with overhead reaching. (R. 249). Plaintiff was not seen again until October 2003, at which point he complained of chest pain and pain moving from his back to his chest. (R. 249). In March 2004, Plaintiff reported reflux and anxiety but did not mention shoulder, arm, or back pain. (R. 248). In March 2005, Plaintiff reported no musculoskeletal pain and was treated for hyperlipidemia, reflux, and high cholesterol. (R. 248). In November 2005, Plaintiff reported shoulder and elbow pain made worse by lifting heavy objects and working overhead, and helped by rest and Aleve. Dr. Leytem diagnosed right elbow medial epicondylitis and bilateral shoulder pain, probable osteoarthritis. (R. 247). On January 18, 2006, Plaintiff returned for Dr. Leytem to complete disability forms, and in a statement for the disability office, Dr. Leytem reported that Plaintiff had occasional cervical spasm with some reduced cervical range of motion; some loss of motion in the shoulder; no motor, sensory, or reflex abnormalities; normal gait and the ability to squat, walk on heels and walk on toes; and 5/5 grip strength with normal fine dexterity. (R. 256, 313). There are no further treatment records from Dr. Leytem until January 31, 2007 -- the same day that he completed the assessment at issue here. That day, Plaintiff reported pain in his neck with limited motion, recurrent knee pain in both knees, worse on the left; and bilateral shoulder pain. (R. 311). Plaintiff reported that while his neck pain limited his ability to crawl over and under vehicles, he was able to perform occasional household chores. He denied joint tenderness, swelling, recent falls, or trauma. Dr. Leytem noted crepitus in the knees with range of motion and pain

-7-

at the AC joints with palpation and he diagnosed osteoarthritis-multiple joints and hyperlipidemia. *Id.*

By my review, while Plaintiff undoubtedly had some limitations caused by problems in his neck and shoulders, his claim of totally disabling impairments is unsupported.  More particularly, the PCE assessment by Dr. Leytem is also unsupported by his clinical notes and findings.  As noted by the ALJ, there are no clinical findings in Dr. Leytem's records supporting a lifting limitation for five pounds.  The doctor's statement that Plaintiff would likely miss more than four days a month by reason of his impairments also appears entirely unsupported.  Further, the doctor's clinical notes, as well as his January 2006 assessment of no sensory, motor, or reflex deficits, and normal grip strength with normal fine dexterity, and normal gait with the ability to squat, walk on heels and toes, all appear inconsistent with the January 2007 assessment by which Plaintiff's lifting was limited to five pounds and his standing and walking to only three hours in an eight-hour day.  In sum, the conclusion that the limitations in Dr. Leytem's PCE were unsupported by, and even inconsistent with his clinical findings and the objective and diagnostic studies, is fairly supported by the medical evidence.

The ALJ also cited to records from a consultative examiner and two state agency doctors in discounting Dr. Leyton's opinions.  Although just an examining doctor, the evaluation by Dr. Lawrence R. Field, D.O., in October 2006 clearly fails to support the severe functional limitations as determined by Dr. Leytem.  (R. 295-97).  Thus, by his examination, Plaintiff evidenced muscle strain in the cervical spine and trapezius musculature, osteoarthritis with degenerative joint disease, hypercholesterolemia, depression, GERD, smoking and alcohol abuse, but he evidenced no mental or physical functional impairments.  (R. 296).  While it appears that this doctor did not have a full

account of Plaintiff's medical records, his physical findings, apart from evidence of muscle strain in the neck and trapezius with some loss of motion, were largely normal. Thus, he found normal passive range of motion in all joints, normal grip and muscle strength, normal fine manipulation, normal gait, and normal heal, toe and tandem walk. Straight leg raise was negative and cranial nerves were intact. (R. 296). Likewise, the two state agency consultants who reviewed Plaintiff's records opined that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for a total of about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and push and/or pull without limitation. (R. 273-80, 298-305). They further opined that Plaintiff had some postural and manipulative limitations and should avoid concentrated exposure to hazards.

Additionally, the ALJ cited Plaintiff's "wide range of daily activities given the alleged functional limitations and severe pain." (R. 21). Thus, as the ALJ noted, correctly, Plaintiff continued to work full duty, three days a week until October 2005. (R. 21, 35, 248-49). His treatment had been infrequent and conservative. Morever, Plaintiff reported that he enjoyed playing pool and hanging out with his friends (R. 50, 258); that he does the laundry and dishes; that he is physically able to go the grocery store; and that he does not mind going to the convenience store. (R. 43, 46).

As noted, even a treating doctor's testimony may be discounted where it is not supported by the evidence, the evidence supports a contrary finding, or the treating source's opinion is conclusory or inconsistent with his or her own medical record. Here, the ALJ has set forth adequate and explicit good cause for discounting Dr. Leytem's PCE to the extent that the physical limitations imposed would preclude all work.

Plaintiff also contends that the ALJ failed to adequately explain Dr. Leytem's opinion regarding his mental impairments.  As noted above, on January 18, 2006, Dr. Leytem completed a brief assessment form in which he noted that Plaintiff's anxiety and social phobia significantly interfered with his daily functioning. (R. 255). The comment was unaccompanied by any explanation or objective clinical signs, diagnostic studies, or laboratory findings to support the conclusory opinion. The ALJ considered this opinion but found any mental impairment non-severe.  In doing so, he noted that Dr. Leytem, who is not a mental health specialist, had not referred Plaintiff for formal psychiatric/psychological treatment. (R. 18).  Moreover, the ALJ considered the opinions of two state agency medical consultants, both of whom concluded that Plaintiff's mental impairments resulted in only mild limitations.  (R. 259-72, 281-93).  The ALJ also considered the findings of Gary Honickman, Ph.D., who performed a general clinical evaluation with mental status on April 19, 2006. (R. 257-58).  Dr. Honickman noted that Plaintiff's mood and affect were mildly depressed and anxious but that his thought processes were organized and his thought content was situationally appropriate; his insight and judgment were fair; and his memory was intact.  In addition, Plaintiff reported to Dr. Honickman that he shoots pool at his pool table and friends come by to "hang out" with him.

By my consideration, Plaintiff has failed to provide any objective medical evidence suggesting that his mental impairment caused more than mild limitations.  And again, I conclude that the ALJ properly considered the opinions of Dr. Leytem as a treating physician and articulated specific reasons supported by substantial evidence for discounting his opinions regarding Plaintiff's mental functional limitations.

Plaintiff also urges that instead of discounting the testimony from Dr. Leytem, the ALJ should have ordered additional "basic testing," such as x-rays, before rendering his opinion.  In support, he cites a comment by Dr. Leytem that the medical basis for his January 2007 PCE was Plaintiff's osteoarthritis and "possibly other diagnoses but unable to do lab [and] radiology eval due to cost restrictions."  (R. 308).

It is well-settled that the ALJ has a basic duty to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  This obligation exists whether or not the claimant is represented by counsel.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  In light of this obligation, an ALJ must order a consultative examination when "such an evaluation is necessary for him to make an informed decision."  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)); *see also Wilson*, 179 F.3d at 1278.  Nonetheless, it is the claimant's burden of proving that he is disabled and he is responsible for producing evidence in support of his claim.  *See Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)).  Furthermore, case law in this circuit requires the Plaintiff to show some prejudice before a remand to the Commissioner for further development is ordered.  *See Graham*, 129 F.3d at 1423.  In considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice.  *Id.*

In light of the doctor's comment, Plaintiff urges that, at a minimum, the ALJ should have ordered x-rays before discounting this doctor's evidence.  However, Plaintiff fails to demonstrate in a substantive way how additional x-rays were necessary for an informed decision of his claim.

-11-

The ALJ had no quarrel with the diagnosis by Dr. Leytem only the functional limitations he assessed.  Even if there were other medical conditions which accounted for his impairments, an additional diagnosis alone would not advance his claim one bit.  And, on this argument, the court is left to speculate that x-rays (or other unspecified laboratory tests) might advance –as opposed to refute- his disability claim.  Further, there is no demonstration of an evidentiary gap, conflict, or ambiguity in the record necessitating additional work-up and thus, the ALJ was not required to order additional testing.  As discussed above, substantial evidence of record supports the ALJ's finding that Dr. Leytem's functional assessment overstated Plaintiff's limitations, whether caused by osteoarthritis alone or in combination with some other possible impairment.  Under these circumstances, the ALJ was not required to solicit additional testing.

Based on this conclusion, I need not address Plaintiff's second argument -- i.e., that if the ALJ had properly credited the opinions of Dr. Leytem, Plaintiff would be disabled based on the testimony of the VE.

D.

For the foregoing reasons, it is recommended that the decision of the Commissioner of the United States Social Security Administration be affirmed.  It is further recommended that the Clerk be directed to enter Judgment in favor of Defendant and to close the case.

Respectfully submitted this
9th day of August, 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

-12-

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a de novo determination by a district judge. 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72; M.D. Fla. R. 6.02; *see also* Fed R.Civ.P. 6.

Copies furnished to:
The Honorable G. Kendall Sharp, Senior United States District Judge
Counsel of Record